# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**BRENDA RIGGS**                                                          **PLAINTIFF**

v.                           No. 4:22-cv-1017-DPM

**HARTFORD LIFE & ACCIDENT**
**INSURANCE COMPANY; COMPUTER**
**SCIENCES CORPORATION; and**
**DXC TECHNOLOGY SERVICES LLC**                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Brenda Riggs received disability benefits under an ERISA-governed disability plan for almost five years. Hartford Life & Accident Insurance Company and DXC Technology Services LLC denied her benefits in 2022 after concluding that she no longer met the plan's definition for being totally disabled. She filed suit and has moved for judgment on the record.

The background of this case is convoluted. Here are the critical points.

- Riggs worked for Hewlett Packard as an insurance health specialist and enrolled in its ERISA-governed disability plan.

- The Disability Plan says that Hewlett Packard is the plan sponsor and administrator, and that Sedgwick CMS is the claim administrator. AR 3359 & 3362. As claim administrator, Sedgwick had the discretionary authority

(and was the named fiduciary) to determine entitlement to disability benefits, including any initial claims and reviews of any appeals.  AR 3388.

- In January 2017, Riggs went on short-term disability due to pain related to cervical spondylosis, occipital neuralgia without myelopathy, and cervicogenic headaches.

- In March 2017, Hewlett Packard spun off Riggs's division, which merged with Computer Sciences Corporation and formed DXC Technology.

- In July 2017, Riggs and her co-workers were brought onto DXC Technology's benefits plan.  But Riggs's benefits under Hewlett Packard's disability plan were grandfathered in because she was on disability during the corporate restructuring.  Following the spin-merge, DXC Technology stepped into the shoes of Hewlett Packard as plan sponsor and administrator.  *Doc. 22 at 1 & 8.*

- Later that month, Sedgwick approved Riggs for long-term disability benefits.

- The Disability Plan provides that, for the first twenty-four months following sickness or injury, a plan participant is "totally disabled" if she is unable to perform the essential functions of her own occupation.  AR 3363.  After twenty-four months, the standard changes to "any occupation."  *Ibid.*

- In January 2019, Sedgwick found that Riggs was totally disabled under the "any occupation" standard and continued her long-term disability benefits.  AR 423.

- In April 2019, Hartford took over for Sedgwick in administering Riggs's disability claim.

- In August 2019, Riggs was approved for Social Security disability benefits.

- In December 2019, Hartford denied Riggs's application to continue her long-term disability benefits.

- Riggs appealed and, in July 2020, Hartford reversed itself, finding that she was disabled under the "any occupation" standard. AR 1179.

- In February 2021, Hartford and Computer Sciences Corporation entered into an administration agreement. *Doc. 29*. Under the agreement, Hartford continued to act as the initial decisionmaker on claims for disability benefits, but Computer Sciences Corporation (meaning DXC Technology) became the decisionmaker on any appeals. *Doc. 29 at 4-5*. Hartford, though, agreed to handle appeals and make recommendations to Computer Sciences Corporation. But the agreement made clear that Hartford assumed no fiduciary responsibility of any kind. *Doc. 29 at 5 & 8*. Riggs's disability plan, which provided that the claims administrator was the named fiduciary for determining entitlement to disability benefits, was not changed. AR 3388.

- In December 2021, almost eighteen months after finding that Riggs was totally disabled, Hartford denied Riggs's long-term disability benefits again. AR 1151-57.

- Riggs appealed in April 2022. AR 1322-24. Consistent with the new drill outlined in the February 2021 administration

-3-

> agreement, Harford did not approve or deny Riggs's appeal. Instead, it evaluated materials submitted by Riggs, ordered additional medical and vocational reviews, and sent the claim file to DXC Technology along with a recommendation that the appeal be denied. AR 1139-42 & 1256.

- On 29 July 2022, DXC Technology emailed Hartford that it agreed with the recommendation. AR 1251. Later that day, Hartford sent Riggs a five-page letter denying the appeal. AR 1134-38.

The parties disagree about the standard of review. Riggs says *de novo*; DXC Technology, Hartford, and Computer Sciences Corporation say abuse of discretion. Because the Court concludes that Riggs is entitled to benefits regardless of the standard, the Court will review for an abuse of discretion. *Bernard v. Kansas City Life Insurance Co.*, 993 F.3d 588, 592 (8th Cir. 2021).

The question is whether DXC Technology's decision to deny benefits was reasonable. *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 883–84 (8th Cir. 2002). Reasonable means it was supported by substantial evidence, which is enough evidence that a reasonable mind might accept as adequate to support a conclusion. *Ibid.* Here, DXC Technology relied on independent medical reviews and an employability analysis report that concluded that Riggs could work. Isn't that enough?

Not on this record. There are two structural factors that weigh against DXC Technology's decision.

-4-

**Procedural Irregularities.** Irregularities in the procedure leading to a denied claim are a factor that can support finding an abuse of discretion. *Roebuck v. USAble Life*, 992 F.3d 732, 738 (8th Cir. 2021). Minor procedural defects carry little weight. *McIntyre v. Reliance Standard Life Insurance Co.*, 73 F.4th 993, 1002 (8th Cir. 2023). But the Court must weigh heavily any irregularity that leaves "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Ibid.*

This case presents significant procedural irregularities. As formulated in 2016, the plan almost entirely removed its sponsor (Hewlett Packard) from the process for determining eligibility for benefits. Sedgwick (the claim administrator) assumed the fiduciary responsibility of determining eligibility at both the initial claim stage and on appeal. The plan was structured this way to best eliminate the conflict of interest that arises when an employer who funds a plan also evaluates eligibility for benefits. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 112 (2008). And when Sedgwick evaluated Riggs's eligibility, she was approved every time, including under the "any occupation" standard. But then DXC Technology—a company Riggs never worked for—replaced Sedgwick with Hartford as claims administrator. Within months, Hartford found that Riggs wasn't disabled. After Hartford reversed itself on appeal, DXC Technology and Hartford entered into the administration agreement that changed

how claims would be evaluated. Now, the claim administrator (Hartford) had disclaimed any fiduciary duty in evaluating claims and the plan sponsor (DXC Technology) had the sole authority for determining claims on appeal. And when Riggs appealed Hartford's denial in 2022, DXC Technology denied her claim.

**Conflict of Interest.** The Court can also consider any conflicts of interest in determining whether there was an abuse of discretion. Because DXC Technology was both the plan sponsor and the claim evaluator for any appeals of denied claims, it had a conflict of interest. *Roebuck*, 992 F.3d at 737. In determining what weight to give to that conflict, the Court must consider several circumstances.

- Whether DXC Technology's review process was tainted by bias;

- If the doctors reviewing Riggs's claim were employed by DXC Technology;

- If those doctors' compensation was tied to their findings;

- If DXC Technology acted as little more than a rubberstamp for favorable medical opinions;

- Whether DXC Technology's administration history for other claims shows bias; and

- Any efforts taken by DXC Technology to ensure that claims assessment is not affected by the conflict.

*Ibid.*

This case presents a mixed bag. On the one hand, the doctors that Hartford hired who reviewed Riggs's claim in 2021 and 2022 were independent medical reviewers. There's nothing indicating that their compensation was dependent on their finding that Riggs wasn't disabled. There's also nothing in the record about DXC Technology's administration history for other claims. On the other hand, it is clear that DXC Technology (and Hartford) acted as a rubberstamp for the opinions favoring denial while summarily dismissing the opinions of Riggs's treating physicians and the Social Security Administration. The Court therefore gives some weight to the conflict.

With those factors in mind, on to the merits. Hartford denied Riggs's claim for continued long-term disability benefits in December 2021. Riggs had been receiving benefits under the disability plan for approximately five years at that point. Hartford's decision came only a year and a half after it found that she was totally disabled under the "any occupation" standard. What changed? Not much. Hartford obtained reports from Dr. Bryant Martin, an independent medical reviewer, and Chelsea Hartwig, a vocational case manager. AR 1154-55. To prepare his report, Dr. Martin reviewed Riggs's medical records and spoke with Dr. Kenneth Johnston, Riggs's attending physician. AR 1154 & 1575-82. Dr. Johnston told Dr. Martin that he had not performed a full physical exam on Riggs and hadn't provided a functional capacity evaluation. AR 1579 & 1547. Dr.

-7-

Johnston said that most of the restrictions he had recommended for Riggs were based on her self-reports and agreed that a functional capacity evaluation would be appropriate. AR 1579 & 1547. In his report, Dr. Martin wrote that Riggs "has significant and verified degenerative disease with supporting imaging findings and the requirement for continual pain intervention. There is no expectation at this point that the claimant's condition will improve." AR 1581. Despite making this finding, Dr. Martin concluded that Riggs could sit for a total of eight hours a day with a five-minute break every hour. AR 1580. Relying entirely on Dr. Martin's conclusions, Ms. Hartwig concluded that Riggs could work as a project manager, scheduler/maintenance, skip tracer, or jacket preparer. AR 1522-1534.

In her appeal, Riggs submitted a functional capacity evaluation conducted by Stuart Jones, a physical therapist. AR 1325-41. Jones concluded that Riggs "did not demonstrate the ability to perform more than part time daily work (3-4 hours) and even when working in that period required multiple breaks to sit in a reclined position on an as needed basis to recover from progressive symptoms." AR 1327. Riggs also submitted a follow-up February 2022 opinion from Dr. Johnston that she could sit for less than two hours during an eight-hour workday and that her medical issues would require her to miss more than three days of work every month. AR 1342-45. Riggs's vocational specialist,

Robert White, concluded that there were no jobs that she could perform in light of these restrictions. AR 1346-47.

Hartford then obtained additional independent medical reviews from Dr. Lisa Pitino and Dr. David Oberlander. AR 1304-17. Based on her review of Riggs's medical records, Dr. Pitino found that it was "reasonable to support a degree of restrictions and limitations" for Riggs. AR 1310. But the only restrictions noted in Dr. Pitino's report were that Riggs should never climb ladders and should only occasionally reach above shoulder level. AR 1310. She determined that Riggs could sit, stand, and walk without any restrictions. AR 1310. Based on his review of the medical records, Dr. Oberlander found "no indication for restrictions and limitations from a strictly neurologic perspective." AR 1315. In denying Riggs's claim on appeal, DXC Technology relied exclusively on Dr. Pitino and Dr. Oberlander's findings. DXC Technology didn't address the functional capacity evaluation or Dr. Johnston's 2022 report regarding Rigg's condition. Instead, it mentions them only in passing. AR 1134-38.

For five years, Riggs was considered totally disabled under the disability plan. There was no new medical evidence showing some miraculous improvement. Rather, DXC Technology found that she was no longer disabled based on the report of two doctors that reviewed medical records. This is some evidence. But, considering the procedural irregularities in this case, DXC Technology's conflict of

interest, the prior claim decisions made on the record as a whole, the award of social security disability benefits, and the lack of recovery evidence, the independent medical examiners' conclusions are not substantial enough to support the about-face in this case. Ignoring relevant evidence is an abuse of discretion. *Willcox v. Liberty Life Assurance Company of Boston*, 552 F.3d 693, 701-02 (8th Cir. 2009). And, in light of the record as a whole, DXC Technology's denial of long-term disability benefits was an abuse of discretion. *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 885 (8th Cir. 2002).

\*   \*   \*

Rigg's motion for judgment on the record, *Doc. 21*, is granted as modified. Riggs is entitled to recover all unpaid long-term disability benefits, offset by her Social Security disability benefits, with pre-judgment interest. She is also entitled to future benefits subject to changes in her condition, of course. Joint report on benefit calculation and any motion for attorney's fees and costs due by 10 May 2024. The Court will withhold Judgment in the meantime.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

29 March 2024

-10-